JOHN R. GIBSON, Circuit Judge.
 

 Burlington Northern, Inc. appeals from a judgment entered against it in its claim for indemnity from Bellaire Corporation, formerly North American Coal Corporation, under the terms of sections 7 and 13 of an Industrial Track Agreement entered into between the parties. BN settled a wrongful death action brought by the estate of one of its employees and then sued North American for indemnification under their Agreement. The district court found that BN was not entitled to indemnification from North American under either provision of the Agreement. BN now appeals, arguing that the district court erred in its interpretation of the Agreement by requiring BN to prove common law negligence on the part of North American as a condition to recovery under section 7 and by denying
 
 *762
 
 it indemnity under section 13. We reverse the district court’s judgment denying indemnity under section 7 and remand with instructions to enter judgment in favor of BN in the amount of $225,000.00, half of the sum BN paid in settlement of the wrongful death action. We affirm the district court’s denial of indemnification under section 13.
 

 BN provides rail service to North American’s coal mine in Zap, North Dakota. Since 1975, BN and North American have been parties to an Industrial Track Agreement that contains the following indemnity provisions:
 

 Section 7. Industry [North American] agrees to indemnify and hold harmless Railroad [BN] for loss, damage, injury or death from any act or omission of Industry, its employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or near said track and crossing, and if any claim or liability shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally.
 

 Section 13.
 

 (a) ....
 

 Industry agrees to indemnify Railroad for personal injuries or death to any and all persons whomsoever, caused by any defect in said cars while said cars are in Industry’s possession and control.
 

 On December 22, 1982, a BN crew brought a string of nine empty coal cars to the mine. The cars were left on track owned and maintained by North American. BN crew members testified that they set the brakes on each of the three low-end cars. (Tr. at 101-03).
 

 The following day, two North American mine employees were directed to break the string of nine cars to clear a crossing. One of the employees separated the two lowest cars from the string of nine cars by first releasing the air brakes on the first two cars and then releasing the hand brake on the second car. As the employee released the hand brake on the second car, both cars rolled, clearing the crossing area. The employee tightened the hand brake on the second car and both cars stopped. The employee did not attempt to tighten the hand brake on the first car or determine why the first car had rolled with a hand brake that appeared to have been set.
 

 The following day, a BN train crew came to pick up railroad cars. The engine unsuccessfully attempted to couple with the two cars that had been moved earlier by the North American employees. Two members of the BN crew, Gary Rader and Tom Schmeichel, got off the engine. The engineer then backed the engine up about six feet.
 
 [1]
 
 Assuming that the cars had coupled with the engine, Schmeichel walked to the end of the second car and released its brake, causing it and the first car to roll toward the engine. Rader was crushed and killed when he was caught between the couplers of the first car and the engine.
 

 Rader’s estate brought a wrongful death action against BN. BN tendered the defense to North American. BN then settled the Rader action for $450,000, and North American, without knowledge of the settlement, rejected BN’s tender of the defense. BN then brought this action seeking indemnity from North American based on sections 7 and 13 of the Industrial Track Agreement.
 

 The district court ruled that North American had no obligation to indemnify BN under section 7 because Rader’s death was caused by his own negligence and a series of negligent acts on the part of the BN crew, not by an act or omission on the part of North American.
 
 Burlington Northern, Inc. v. Bellaire Corp.,
 
 No. A1-86-126, slip op. at 7 (D.N.D. August 22, 1989). The district court also concluded that BN was not entitled to indemnification under section 13 of the Agreement because North American was not in “control” of the coal cars at the time of the accident.
 
 Id.
 
 at 8-9. This appeal followed.
 

 
 *763
 
 I.
 

 BN first argues that the district court erred by construing section 7 of the agreement to require that BN prove common law negligence on the part of North American as a condition of recovery. BN is correct that it does not have to prove North American was negligent. BN is entitled to indemnification from North American if it establishes that “an act or omission” of North American caused or contributed to cause the accident.
 
 Burlington Northern, Inc. v. Hughes Brothers, Inc.,
 
 671 F.2d 279, 284 (8th Cir.1982);
 
 Missouri Pacific R.R. Co. v. International Paper Co.,
 
 618 F.2d 492, 496 (8th Cir.1980).
 

 It is well settled in this circuit that an “industry’s obligation to indemnify a railroad under an industrial track agreement is a contractual duty and not a duty arising under the common law of tort.”
 
 Hughes Brothers,
 
 671 F.2d at 284 (citing
 
 International Paper,
 
 618 F.2d at 496). These contracts are made in contemplation of the railroad’s liability under the Federal Employers’ Liability Act (“FELA”), which subjects the railroad to liability for failure to furnish a safe workplace.
 
 Hughes Brothers,
 
 671 F.2d at 283-84.
 

 In cases dealing with identical indemnity agreements, this circuit has held that the primary inquiry is two-fold. First, the fact finder must determine “if an act or omission of the industry caused the injury.”
 
 Hughes Brothers,
 
 671 F.2d at 284. “The phrase ‘act or omission’ includes any act or omission which constitutes a violation of the railroad’s duty to provide a safe workplace, and thus, subjects it to liability under [FELA].”
 
 Hughes Brothers,
 
 671 F.2d at 284;
 
 see also International Paper,
 
 618 F.2d at 496. Second, if the industry’s act or omission caused the injury, then the fact finder must determine whether the railroad is entitled to full or partial indemnity. The railroad may only recover one-half of its liability if “the industry can prove that the railroad was negligent and its negligence contributed to the injury.”
 
 Hughes Brothers,
 
 671 F.2d at 284-85 (citing
 
 International Paper,
 
 618 F.2d at 497).
 
 See also Illinois Cent. Gulf R.R. Co. v. Crown Zellerbach Corp.,
 
 859 F.2d 386, 390-91 (5th Cir.1988) (“railroad must be found negligent under common law standards before its recovery from the indemnitor will be limited by the agreement to one-half of the underlying liability”).
 

 Our reading of the district court’s opinion shows that the district court mistakenly required BN to prove negligence on the part of North American as a condition of recovery under section 7. Despite the court’s findings
 
 [2]
 
 that a North American employee “did not attempt to tighten the brake” on the first car or determine why that car “rolled with a set brake,”
 
 Burlington Northern,
 
 slip op. at 3, and in spite of the judge’s own statement at trial that “[i]f both brakes had been set he wouldn’t have been killed” (Tr. at 260), the district court concluded that the accident was not caused by an “act or omission” of North American.
 
 [3]
 
 The court reached this
 
 *764
 
 conclusion because it found that North American owed the BN employee no “greater duty than to leave the coal cars securely on the track in substantially the same manner as they were found.”
 
 Burlington Northern,
 
 slip op. at 7. We are satisfied that the district court improperly engaged in a negligence inquiry in interpreting section 7, and contrary to North American’s argument on appeal, we cannot conclude that the court’s holding was simply an alternative holding.
 

 The district court’s factual findings establish that Rader’s death did result from an “act or omission” of North American triggering liability under section 7. Specifically, the court found that the North American employee failed to tighten the brakes on the first car or determine why the car rolled with the set brake.
 
 Id.
 
 at 3. These findings of the district court compel the conclusion that there was an “act or omission” of North American that resulted in a violation of BN’s duty to provide a safe workplace. Accordingly, BN is entitled to indemnification by the terms of section 7.
 
 See Hughes Brothers,
 
 671 F.2d at 284;
 
 International Paper,
 
 618 F.2d at 496.
 

 The district court’s findings also establish the existence of “joint or concurring negligence” on BN’s part. The court found several examples of BN’s negligence that contributed to the accident, including “a lack of communication” between Mr. Rader and the other brakemen, Mr. Schmei-chel’s “erroneous assumption” that a coupling had been made, the engineer’s failure “to leave fifty feet between coupling units,” and “Mr. Rader’s crossing between the couplers.”
 
 Burlington Northern,
 
 slip op. at 7. Thus, under the terms of section 7, BN is entitled to recover only one-half of its liability.
 
 See Hughes Brothers,
 
 671 F.2d at 284-85;
 
 International Paper,
 
 618 F.2d at 497. We reverse the district court’s judgment denying indemnity to BN under section 7 and remand with instructions to enter judgment in favor of BN in the amount of $225,000.00, or fifty percent of the sum BN paid in settlement of the wrongful death action.
 

 II.
 

 BN next argues that the district court erred in failing to award it indemnity under Section 13(a) of the Industrial Track Agreement. That section provides: “Industry agrees to indemnify Railroad for personal injuries or death to any and all persons whomsoever, caused by any defect in said cars while said cars are in industry’s possession and control.” The parties added the words “and control” when they signed the agreement. The district court rejected BN’s claim for indemnification under this provision because it concluded that the cars were not under North American’s control.
 

 BN argues that the district court erred in construing the term “control.” BN concedes that North American did not exercise physical control of the cars at the time of the accident. Nevertheless, BN contends that “control” means the “authority to manage, direct, superintend, restrict or regulate.”
 
 State v. Ehr,
 
 52 N.D. 946, 204 N.W. 867, 870 (1925). BN argues that according to this definition, North American exercised control over the ears once they were placed upon the tracks on North American’s property as evidenced by North American’s determination of the location and number of ears kept on its tracks.
 

 The district court found that although North American had possession and the right of control over the cars by determining the number and directing the location of cars, North American did not have “actual physical control or dominion over the movement of the coal cars” at the time of the accident.
 
 Burlington Northern,
 
 slip op. at 8. We are satisfied that the posses-sory right of control that North American enjoyed at the time of the accident was not the type of control contemplated by the parties in the Industrial Track Agreement and that North American was not exercising control of the cars within the meaning of section 13(a). The accident happened while BN was moving the cars and without any direct involvement on the part of North American. Indeed, there were no
 
 *765
 
 North American employees even near the cars at the time of the accident. Moreover, that the parties specifically added the term “control” to the agreement suggests that the parties intended the term control to mean something more than North American’s right or authority to determine the number and location of the cars in its possession.
 
 [4]
 
 We affirm the district court’s judgment denying indemnity under section 13(a).
 

 Accordingly, we reverse the district court’s judgment denying indemnity under section 7 and remand with instructions to enter judgment in favor of BN in the amount of $225,000.00, or fifty percent of the sum BN paid in settlement of the wrongful death action. We affirm the district court’s judgment denying indemnity under section 13(a).
 

 [1]
 

 . Burlington Northern Safety Rule 156 requires that if a coupling is not made, the engineer must back the engine at least 50 feet from the car and stop it, before anyone goes between the cars.
 

 [2]
 

 . The district court made the following factual findings concerning North American’s involvement in the Rader accident:
 

 One employee set the hand brake on car # 3, then pulled the pin, uncoupling car #2 from car # 3. He then called to the other employee who proceeded to release the air on both car #2 and car #1, then backed off the hand brake on car #2. As the brake on car # 2 was released, car # 2 and car # 1 rolled down the grade, clear of the crossing area. When the distance was sufficient, the first employee again called out and the other, still at brake on car # 2, tightened that brake down, and the cars stopped.
 

 The mine employee did not release the hand brake on car # 1. The hand brake appeared to be snug, or at least partially set. Car # 1 rolled—even though the brake appeared to be set—and even though strings are generally parked with the brake set on the lowest car(s). The mine employee did not attempt to tighten the brake on car #1 or to determine why car # 1 had rolled with a set brake. The mine employee indicated that some brakes work better than others, and that the incident was not really all that remarkable.
 

 Burlington Northern,
 
 slip op. at 3.
 

 [3]
 

 . The district court’s factual findings concerning North American’s involvement in the Rader accident is inconsistent with its conclusion that the accident was not caused by an act or omission of North American, and thus is clearly erroneous.
 
 Anderson v. City of Bessemer City,
 
 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84
 
 *764
 
 L.Ed.2d 518 (1985);
 
 Gardner v. Morris,
 
 752 F.2d 1271, 1281 (8th Cir.1985).
 

 [4]
 

 . Under the terms of the agreement, North American is deemed to have possession of cars when they are located on track on North American’s property.